## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BAZANHE FIKURU,** individually and on behalf of all others similarly situated,<br><br>                                Plaintiffs,<br>v.<br><br>**ROOSEVELT UNIVERSITY,**<br><br>                                Defendant. | Case No. 1:23-cv-04320<br><br><br><br>Complaint filed July 6, 2023 |
| **ELIZABETH ANIOL,** individually and on behalf of all others similarly situated,<br><br>                                Plaintiff,<br>v.<br><br>**ROOSEVELT UNIVERSITY,**<br><br>                                Defendant. | Case No. 1:23-cv-04524<br><br>Complaint filed July 13, 2023 |

## PLAINTIFFS' MOTION TO CONSOLIDATE RELATED ACTIONS AND APPOINT INTERIM CO-LEAD CLASS COUNSEL AND MEMORANDUM IN SUPPORT

Under Federal Rules of Civil Procedure 42(a) and 23(g)(3), Plaintiffs Bazanhe Fikuru and Elizabeth Aniol (collectively, "Plaintiffs"), by and through their undersigned counsel, respectfully move this Honorable Court for the consolidation of the "Related Actions" (defined below) and appointment of Mason A. Barney of Siri & Glimstad LLP ("Barney") and Kevin Laukaitis ("Laukaitis") of Laukaitis Law LLC (collectively, "Proposed Interim Co-Lead Counsel") as Interim Co-Lead Class Counsel. As explained below, the appointment of Barney and Laukaitis as Interim Co-Lead Class Counsel will provide the counsel "best able to represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(2). In support of their motion, Plaintiffs submit the following Memorandum in Support.

1

## I.       INTRODUCTION

The two above-listed related class action lawsuits have common questions of facts and law against the same defendant, Roosevelt University ("Roosevelt"), and are currently pending in this District (collectively, the "Related Actions"). The Related Actions arise from the same operative facts surrounding a cyberattack on Defendant's computer network beginning on or around May 1, 2023 ("the Data Breach"). The type of Private Information (names, addresses, Social Security numbers, and driver's license numbers) at issue is the same in both Related Actions. Furthermore, Plaintiffs in the Related Actions allege that their Private Information was compromised in the Data Breach. The Plaintiffs also commonly raise legal questions that Defendant breached the same or similar common law and statutory duties that allowed the Data Breach to occur. Finally, each Related Action seeks the same remedies and compensation for those injured and affected by the Data Breach. As such, the Related Actions present common factual and legal questions, involving the same and/or similar discovery efforts. Accordingly, consolidation of this litigation under Rule 42(a) will promote efficiency in the discovery process, and consistency in judicial rulings, reducing duplication, costs, and delay.

Furthermore, Proposed Interim Co-Lead Counsel are the right team to guide this litigation for the putative class members. Barney and Laukaitis are nationally recognized as leaders in data breach litigation and have litigated and are currently litigating dozens of data breach class actions. Moreover, Proposed Interim Co-Lead Counsel's respective firms have the resources necessary to prosecute and to take a complex data breach class action like the one before this Court to trial. Their appointment will best serve the Class.

Proposed Interim Co-Lead Counsel were the first to file complaints arising out of this data

breach[1] and since then has been intimately involved in investigating, prosecuting, and coordinating this litigation, including the preparation and filing of this motion. Proposed Interim Co-Lead Counsel plan to make contact with defense counsel in the near term, and to begin a voluntary discovery process, designed to culminate in voluntary early mediation. Appointment of Interim Co-Lead Counsel at this early juncture will facilitate the possibility of early potential resolution, thereby conserving judicial resources and avoiding lengthy, protracted litigation.

For these reasons, Plaintiffs propose that the Related Actions be consolidated and Interim Co-Lead Counsel, who represent counsel for all Related and putatively consolidated Actions, have responsibility for strategic decisions associated with the prosecution of these consolidated cases (and any subsequently filed consolidated case). As described herein, Plaintiffs' proposed leadership structure will permit them to prosecute this case efficiently and in the best interests of the putative classes. Proposed Interim Co-Lead Counsel are experienced with handling class action litigation, especially data breach and privacy cases, and have performed substantial work investigating, originating, coordinating, and litigating these claims. Furthermore, Proposed Interim Co-Lead Counsel have the experience, knowledge, and resources to continue prosecuting this action in the putative classes' best interest, including substantial experience litigating privacy and data breach class actions. Additionally, Proposed Interim Co-Lead Counsel have a history of working together, and will continue to work cooperatively and effectively towards the interests of the proposed classes if appointed as Interim Co-Lead Counsel.

## II.    BACKGROUND

These Related and putatively consolidated Actions arise from the Data Breach involving

---

[1]     *Fikuru v. Roosevelt University*, Case No. 1:23-cv-04320 (filed July 6, 2023) and *Aniol v. Roosevelt University*, Case No. 1:23-cv-04524 (filed July 13, 2023).

Defendant Roosevelt. Defendant is a private, not-for-profit university in the state of Illinois. Plaintiffs allege that on or around May 1, 2023, an unauthorized third party gained unauthorized access to Defendant's computer network and exfiltrated data containing the sensitive information of at least 47,000 current and former students. Roosevelt began notifying state Attorneys General and Class Members about this widespread breach on or around June 28, 2023. Plaintiffs allege that Defendant failed to safeguard its current and former students' Private Information properly.

Plaintiffs each received notice from Defendant that they were victims of the Data Breach in or around early July of 2023 and decided to file their respective class actions in the following weeks. The Related Actions were filed within days of the Plaintiffs receiving notice of the Data Breach, and each alleges virtually identical facts and similar legal claims. All the Related Actions are class action lawsuits against Roosevelt. Through their respective class actions, Plaintiffs allege a combination of the following causes of action against Defendant, including negligence, negligence *per se*, breach of express contract, breach of implied contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and claims for declaratory and injunctive relief. Following the filing of these cases, attorneys for Plaintiffs discussed potential consolidation and coordination of their respective actions, prompting Plaintiffs to file this motion.

### III.    CONSOLIDATION OF THE RELATED ACTIONS

#### A.  The Related Actions should be consolidated.

Plaintiffs respectfully request and jointly agree that the Related Actions be consolidated. The power to consolidate related actions falls within the broad inherent authority of every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936). Consolidation of actions in federal court is governed by Rule 42 of the Federal Rules of Civil Procedure, which

provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Rule 42(a); *see also UNeMed Corp. v. ProMera Health, LLC*, No. 8:15CV135, 2016 WL 1259387, at *2 (D. Neb. Mar. 30, 2016) ("Consolidation of separate actions presenting a common issue of law or fact is permitted under Rule 42 as a matter of convenience and economy in judicial administration.") (citing *9 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2383* (2d ed. 1994)).

Here, consolidation of the Related Actions is warranted, as the actions raise the same questions of law and arise from the same set of facts surrounding the Data Breach. Specifically, each of the Related Actions focuses on whether Defendant is liable to Plaintiffs and the putative Class, which consists of Defendant's current and former students, as well as anyone else whose information was compromised in the Data Breach, for its failure to protect their Private Information with which it was entrusted. The Related Actions present the same factual and legal questions with respect to the formation of a duty and breach of that duty; involve the same Defendant; involve the same Data Breach; and involve the same types of Private Information. Undersigned Plaintiffs' counsel in each Related Action anticipate that the Related Actions would involve substantially the same discovery and that consolidation would add efficiency and consistency in judicial rulings, and reduce delay and cost. *See Club v. ICG Hazard, LLC*, No. 11-cv-148, 2012 WL 12925351, at *2 (E.D. Ky. Apr. 25, 2012) ("I find these actions involve common questions of law and fact and that consolidation is appropriate to avoid unnecessary costs and delay and to maximize judicial resources.").

Indeed, if not consolidated, the separate Related Actions would result in virtually identical discovery requests, and duplicative motion practice, and would cause an unnecessary drain on judicial resources. And this is true despite minor variations in class definitions and state-specific causes of action in the Related Actions. As explained in *Kaplan v. 21st Century Oncology Holdings, Inc.*, where the court granted a motion to consolidate various class complaints in a similar data breach case:

> "Applying the relevant factors from *Hendrix*, the Undersigned first finds that there is a substantial threat of inconsistent adjudications of common factual and legal issues if the cases are allowed to proceed separately. As stated above, all of the cases are pled as class actions and all of the cases allege a negligence claim. The majority of the cases share other substantive claims as well.…
>
> Second, the Undersigned finds that the burden on parties, witnesses, and available judicial resources will be substantially lessened by consolidation. *Id.* On this point, the Court notes that all of the named Defendants in the thirteen related case are represented by the same counsel of record and none of the Defendants have objected to consolidation for pretrial purposes. Further, no named Plaintiffs in any of the cases have objected to consolidation for pretrial purposes. Moreover, the Undersigned finds that judicial resources will be substantially conserved by administering one consolidated case for pretrial purposes rather than proceeding with thirteen separate cases.
>
> Third, the length of time required to conclude a consolidated lawsuit instead of multiple suits is likely to be significantly lessened and, therefore, weighs in favor of consolidation.
>
> Finally, the relative expense to all parties concerned—particularly with regard to discovery—is highly likely to be lessened by litigating in one consolidated case rather than litigating in thirteen separate cases.
>
> Accordingly, consolidation of these cases not only serves to satisfy the standards set forth in Fed. R. Civ. P. 42(a), Local Rule 1.04(c), and *Hendrix*, but also to 'secure the just, speedy, and inexpensive determination' of these proceedings."

*Kaplan v. 21st Century Oncology Holdings, Inc.*, No. 2:16-cv-210, 2016 WL 9383330, at

6

*2-3 (M.D. Fla. July 21, 2016), *report and recommendation adopted*, No. 2:16-cv-210, 2016 WL 4204781 (M.D. Fla. Aug. 10, 2016).

In addition, to ensure continued judicial efficiency, Plaintiffs also respectfully submit that the Court should order that any future actions filed or transferred to this Court based on the same or similar facts and circumstances be consolidated with this case. *See, e.g.*, *In re Life Partners Holdings, Inc.*, No. DR-11-CV-43-AM, 2012 WL 12875942, at *1 (W.D. Tex. May 9, 2012) ("future cases 'arising out of the same or substantially the same transactions or events as the above captioned cases' shall be united into the consolidated case."); *see also Troy Stacy Enterprises Inc. v. Cincinnati Ins. Co.*, 337 F.R.D. 405, 411 (S.D. Ohio 2021) ("All related actions that are subsequently filed in, or transferred to, this District shall be consolidated into this action.")

Defendant will suffer no prejudice by litigating one consolidated action rather than two—or many more—separate suits. Consolidation of the Related Actions would therefore inure to the benefit of all parties involved.

### B. Proposed Scheduling Order

For efficiency purposes, Plaintiffs propose the following schedule for upcoming briefing,

1.  Plaintiffs shall file a consolidated complaint within forty-five (45) days from the Court's approval of the Motion to Consolidate; and,

2.  Defendant shall have thirty (30) days from the filing of the consolidated complaint to file a responsive pleading, Plaintiffs shall have thirty (30) days thereafter to file any opposition, and Defendant shall have twenty-one (21) days thereafter to file a reply in support.

### IV. APPOINTMENT OF INTERIM CO-LEAD COUNSEL

#### A. Legal Standard

Federal Rule of Civil Procedure 23(g)(3) permits the appointment of interim lead counsel "to act on behalf of putative class members before determining whether to certify the action as a

7

class action." Fed. R. Civ. P. 23(g)(3) (cited in *Adedipe v. U.S. Bank, Nat'l Ass'n*, Nos. 13-2687 (JNE/JJK), 13 22944 (JNE/JKK), 2014 WL 835174, at \*2 (D. Minn. Mar. 4, 2014)); *see also Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 WL 5260511, at \*1 (N.D. Ill. May 30, 2020). Early appointment of interim class counsel is warranted when there are competing "copycat" filings *or* the risk of such filings. Multiple identical or similar actions prevent efficient prosecution of claims, disjointed legal strategy, and prejudice to defendants, plaintiffs, and putative class members. *See Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 867 (E.D. Mich. 2019) ("Designation of interim counsel is particularly appropriate when several lawyers have filed related 'copycat' actions."); *Ekin v. Amazon Servs., LLC*, No. C14-0244-JCC, 2014 WL 12028588, at \*3 (W.D. Wash. May 23, 2014) ("designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.") (quoting Manual of Complex Litigation § 21.11 (4th ed. 2004)).

Rule 23(g) contemplates early appointment of class counsel, even where there are no competing applications, if there is a likelihood that copycat cases will follow. *See, e.g.*, *Tolmasoff v. General Motors, LLC*, No. 16-11747, 2016 WL 3548219, at \*9 (E.D. Mich. June 30, 2016) (appointing two law firms as interim class counsel where "other[] [similar cases] may follow."). Indeed, the Advisory Committee Notes to Rule 23(g)(2)(A) explain that the rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class."

Here, there is a substantial risk that copycat cases will be filed, and early appointment of counsel to lead the prosecution of this class case is necessary to save resources. The Data Breach's full impact was only announced recently, and ***over 47,000*** individuals were affected. Designating

lead counsel now ensures the protection of the interests of the class in making and responding to motions, conducting discovery, and negotiating possible settlements. *See Roe v. Arch Coal, Inc.*, No. 4:15-cv-910, 2015 WL 6702288, at *3 (E.D. Mo. Nov. 2, 2015) (finding it in the best interests of the class to appoint interim class counsel even when no other counsel competed for appointment); *Syzmczak v. Nissan N. Am., Inc.*, Nos. 10 CV 7493(VB), 12 CV 2149(VB), 2012 WL 1877306, at *1 (S.D.N.Y. May 15, 2012) (citing *Manual for Complex Litig.* § 21.11 (4th ed. 2004)).

Determining the appointment of lead class counsel requires the court to consider counsel's: "(1) work in identifying and investigating potential claims; (2) experience in handling class action and complex litigation and the types of claims asserted in the action; (3) knowledge of the applicable law; and (4) available resources." *Adedipe*, 2020 WL 835174, at *2 (citing Fed. R. Civ. P. 23(g)(1)(A)). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The purpose of this Court's review is to ensure that counsel appointed to leading roles are "qualified and responsible, that they will fairly and adequately represent all parties on their side, and that their charges will be reasonable." *Manual for Complex Litig.* § 10.22 (4th ed. 2004) . The ultimate goal is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* § 10.221; *see also Cappello v. Franciscan All., Inc.*, No. 3:16-CV-290-TLS-MGG, 2017 WL 781609, at *3 (N.D. Ind. Feb. 28, 2017). Ultimately, no single factor is determinative; instead, a court should appoint counsel after evaluating all relevant considerations and comparing the relative strengths of counsel. *See* Fed. R. Civ. P. 23(g)(1)(A)-(B); 7B Charles Alan Wright et al., *Fed. Prac. & Proc.* § 1802.3 (3d ed. 2005).

**B. The Court Should Appoint Barney and Laukaitis as Interim Co-Lead Counsel Under Rule 23(g).**

As Plaintiffs will demonstrate below, Proposed Interim Co-Lead Counsel satisfy all requirements for appointment by the Court.

      ***i.***     ***Proposed Interim Co-Lead Counsel have performed substantial work investigating and litigating the claims.***

The Proposed Interim Co-Lead Counsel have diligently investigated and advanced this litigation. Counsels' investigations before filing the Related Actions included: analyzing the circumstances surrounding the Data Breach, interviewing consumers injured by the Data Breach, researching legal claims, drafting initial pleadings, and organizing Plaintiffs and counsel to self-consolidate the actions and move the litigation forward.

Proposed Interim Co-Lead Counsel worked to quickly organize and avoid any delay caused by a leadership dispute to address the merits of the case as expeditiously as possible. Proposed Interim Co-Lead Counsel's efforts at self-organization were successful, as evidenced by this Motion.

The Proposed Interim Co-Lead Counsel operate as a cohesive, well-organized group. Work assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of each firm's strengths while eliminating duplicity. In the future, and if appointed, the Proposed Interim Co-Lead Counsel will establish a standardized protocol for managing and reporting time and expenses incurred. Accordingly, the substantial work and investigation weigh in favor of appointing the Proposed Interim Lead Counsel under Fed. R. Civ. P. 23(g)(3).

      ***ii.***     ***Proposed Interim Co-Lead Counsel Have Significant Relevant Experience***

Proposed Interim Lead Counsel are well-qualified to lead this case. Each member has a track record of successfully litigating and resolving consumer class actions, particularly data breach class actions. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D.

Fla. 2004) (stating that the "most persuasive" factors in choosing lead counsel may be proposed counsel's "experience in, and knowledge of, the applicable law in this field"). Proposed Interim Co-Lead Counsel have ample experience handling class actions (including class actions involving data breaches), complex litigation, and consumer claims. The qualifications and experience of Proposed Interim Co-Lead counsel is set forth below:

### Mason A. Barney of Siri & Glimstad

Mr. Barney is a partner at Siri & Glimstad with over seventeen (17) years of experience in complex litigation. Mr. Barney was recently involved in a class action alleging violations of the Telephone Consumer Protection Act ("TCPA") which resulted in a settlement of $25,000,000, plus free satellite radio service, to a potential class of over 14 million customers (*Buchanan v. Sirius XM Radio, Inc.*, Case No. 3:17-cv-00728 (N.D. Tex.)). Mr. Barney was also trial co-counsel for plaintiffs in an ERISA matter filed as a class action involving breaches of fiduciary duty related to the management and termination of an ESOP, which settled after the beginning of trial for $1,080,000 for the Class (*Kindle v. Dejana*, No. 14-cv-06784 (E.D.N.Y.).

Mr. Barney has also served in leadership positions and as class counsel in numerous data breach and privacy matters, including having been recently appointed class counsel in *Carter, et al. v. Vivendi Ticketing US LLC d/b/a See Tickets*, No. 8:22-cv-01981 (C.D. Cal.), which recently received preliminary approval for a settlement involving 437,310 class members and a $3,000,000 non-reversionary settlement fund. He was also recently named as co-lead class counsel in *Gilleo et al. v. California Pizza Kitchen, Inc.*, No. 8:2021-cv-01928-DOC-KES (C.D. Cal.), which settled with over $2,000,000 going to the class members. Mr. Barney is currently serving as interim co-lead counsel in a number of other data breach actions, including *Pulliam et al. v. West Technology Group*, Case No. 8:23-cv-159 (D. Neb.) and *Perez v. Carvin Wilson Software LLC*, Case No. CV-

11

23-00792 (D. Ariz.).

Additionally, Mr. Barney holds an undergraduate degree in Computer Science and, after college, served as a database programmer for three years. Mr. Barney has also published articles concerning data privacy and cyber security issues in leading publications such as Inc. Magazine, Bloomberg BNA, and Inside Counsel Magazine.

Mr. Barney's biography and Siri & Glimstad's firm resume are attached hereto as Exhibit A, which also includes biographies of the other attorneys and staff with Siri & Glimstad. Mr. Barney has worked with a multitude of law firms across the country, including counsel of record in this matter.

### Kevin Laukaitis of Laukaitis Law[2]

Counsel for Plaintiff Aniol, Laukaitis Law LLC ("Laukaitis Law") is a class action law firm based in San Juan, Puerto Rico, specializing in a variety of complex litigation matters affecting consumers, including data breach, consumer protection, fraud, mislabeling, and breach of contract. Kevin Laukaitis is the Owner and Founding Partner of Laukaitis Law.

Mr. Laukaitis has vast experience in consumer rights litigation and has successfully represented classes of individuals and businesses in various matters involving unlawful business conduct. Mr. Laukaitis has litigated class action cases throughout the United States. He has participated in all stages of litigation in many prominent MDLs and large-scale consumer class actions. Specifically, over just eight years as an attorney, he has participated in dozens of class action lawsuits, many involving defective and/or mislabeled consumer goods products and data security litigation. He has served as class counsel in numerous successful class actions, recovering tens of millions of dollars for classes of consumers, including *Hamlen v. Gateway Energy Servs.*

---

[2]     Laukaitis Law's Firm resume is attached hereto as Exhibit B.

*Corp.*, No. 16-cv-3526, 2017 WL 892399 (S.D.N.Y. May. 6, 2017) (appointed class counsel in a case against energy company who overcharged consumers on their energy bills); *Austin v. Kiwi Energy N.Y., LLC,* No. 515350-207 (N.Y. Sup. Ct. – Kings Cty.) (same); *Bell v. Gateway,* No. 031168/2018 (N.Y. Sup. Ct. – Rockland Cty.) (Same); *Mercado v. Verde Energy USA, Inc.*, NO. 18-cv-2068 (N.D. Ill.) (same); *Williams v. Greenlight Energy, Inc.*, No. 708394/2019 (N.Y. Sup. Ct. – Queens Cty.) (same); *Neversink General Store v. Mowi USA, LLC,* 1L20-cv-09293 (S.D.N.Y.) (appointed class counsel in a case against the company that deceptively marketed fish products). Mr. Laukaitis is also part of the Executive Committee in the MDL *In re: Seresto Flea and Tick Collar Marketing, Sales Practices, and Products Liability Litigation*, 1:21-cv-04447-JRB (N.D. Ill.).

Mr. Laukaitis was also part of the plaintiffs' attorney team that served as Co-Lead Trial Counsel representing 68,000 individuals whose statutory rights were violated by public dissemination of their criminal record history information. Mr. Laukaitis and his team prevailed in a jury trial and achieved an unprecedented settlement for Pennsylvania inmates booked or otherwise detained at the Bucks County Correctional Facility between 1938 and June 18, 2013. The case, *Taha v. Bucks County*, No. 12-cv-6867 (E.D. Pa.), is considered the first class action lawsuit in the United States to proceed to trial on the impact of digital criminal stigma and a government's statutory obligation to protect its citizenry against such stigma.

Springboarding off his success in class actions involving the digital landscape, Mr. Laukaitis has continued to play prominent roles in data breach cases nationwide, including serving as class counsel in *Quezada v. Arbitersports, LLC*, 2:20-cv-05193 (E.D. Pa.), a data breach class action resulting in a class-wide settlement of over 500,000 class members. Mr. Laukaitis is also involved in several other ongoing data breach class actions, including as Co-Lead Interim Counsel

in *Jackson, et al. v. Suffolk University*, 1:23-cv-10019-DJC (D. Mass); and *Guerrero v. Merritt Healthcare Holdings, LLC*, 3:23-cv-00389-MPS (D. Conn.). Laukaitis Law is also involved in dozens of data breach cases currently being litigated throughout the nation. Accordingly, Mr. Laukaitis and his firm are well-positioned to lead this litigation with co-lead counsel, Mr. Barney.

   iii.   ***Proposed Interim Co-Lead Counsel have committed the resources necessary to represent the class and will continue to commit.***

A court appointing interim lead counsel should consider, in part, the resources that counsel will commit to representing the putative classes. Fed. R. Civ. P. 23(g)(1)(C). As needed, proposed Interim Co-Lead Counsel can draw upon the skills and talents of experienced attorneys and staff members located across the country. Each firm understands the time, energy, and skill necessary to lead this litigation, and all have committed the resources required to ensure the effective and efficient representation of the Class members. In fact, Proposed Interim Lead Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to prosecuting this action. Proposed Interim Co-Lead Counsel have already engaged in discussions with experts and have expended significant resources to investigate the data breach, communicate with affected students, research, and draft complaints. To ensure adequate funds are available to prosecute this litigation on behalf of the putative Class, Proposed Interim Co-Lead Counsel will also establish a system to pay assessments proportional to the needs of the case. And, as their firm resumes and counsels' experience indicates, Proposed Interim Co-Lead Counsel have the resources and willingness to see this litigation through to its conclusion, including trial.

   iv.   ***Other Factors Support Designating Proposed Interim Co-Lead Counsel***

Notably, the proposed leadership structure supports all counsel involved in the Related Actions. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at **5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration

to the preferences expressed by the parties themselves, through their counsel. Absent persuasive evidence to the contrary, the court assumes that nominations and votes for lead counsel are made in good faith for reasons that benefit the client."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel.")); *Manual for Complex Litig.* §§ 10.22 (noting the desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing the "private ordering" approach). Proposed Interim Co-Lead Counsel's success in self-organizing and securing each other's support demonstrates their suitability for leadership roles.

Another important consideration in selecting leadership is working well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as court officers, all of which are critical to the successful management of the litigation. *See Manual for Complex Litig.* § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id.*

Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge to ally against often well-financed opponents, as is the case here where counsel for the Related Actions have coordinated organizational efforts. Because the consolidation process has the potential to breed disorganization, in-fighting, and inefficiencies, it is helpful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." *See* Bolch Judicial

Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("Duke Guidelines"), at 43. Selecting lawyers who have previously worked together, as is the case with Proposed Interim Co-Lead Counsel, has many benefits. They have developed working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id.*

Here, as described above, Proposed Interim Co-Lead Counsel have strong working relationships with each other and moved quickly and effectively to organize the Related Actions to put forward the leadership structure proposed herein.

Importantly, Proposed Interim Lead Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. Proposed Interim Co-Lead Counsel understand that they will be required to make contributions to fund the litigation and will not accept any third-party funding to do so. While Proposed Interim Co-Lead Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. To this end, Proposed Interim Lead Counsel have already discussed how best to organize to effectively use its members' diverse skills and unique experiences for the efficient prosecution and management of this litigation while avoiding unnecessary and duplicative billing.

### C. The First-to-File Rule Further Supports the Appointment of Proposed Interim Co-Lead Counsel.

As mentioned above, Proposed Interim Co-Lead Counsel filed the first two actions arising from this data breach. When considering Rule 23(g) motions, federal courts across the country

16

give deference to counsel in the first-filed case when they are qualified to handle the action. *See In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (appointing as interim lead counsel the firms that filed the first complaints and holding that where a firm has "filed the first complaint[] in [the] case, and the subsequent complaints filed . . . are substantially similar to those initial filings," it provides evidence of the firm's "substantial history of investigating the potential claims in this action."); *see also In re Insulin Pricing Litig*., 2017 WL 4122437, at *3 (D.N.J. Sept. 18, 2017) (appointing class counsel in part because they "filed the first complaint in this litigation"); *Steele v. United States*, 2015 WL 4121607, at *4 (D.D.C. June 30, 2015) ("[S]ince both groups are more than qualified to handle this action, it would be imminently reasonable to select the Motley Rice Group on the basis that their complaint was filed first."); *Michelle v. Arctic Zero, Inc*., 2013 WL 791145, at *2 n.3 (S.D. Cal. Mar. 1, 2013) ("[F]irst-to file can be a relevant factor when the factors for class counsel do not tilt heavily in either direction and there is a need for an objective tie-breaker."); *Richey v. Ells*, 2013 WL 179234, at *2 (D. Colo. Jan. 17, 2013) ("Ultimately, Plaintiff Richey was the first to file his case and, therefore, the Court appoints his counsel as Lead Counsel for the consolidated action."); *Carlin v. DairyAmerica, Inc.*, 2009 WL 1518058, at *2 (E.D. Cal. May 29, 2009) (where multiple counsel filing two identical class action lawsuits seek appointment of interim class counsel, appointment of the first-filed counsel is appropriate where "a simple comparison of the original complaint . . . with the [second-filed complaint] reveals that they are almost identical"); *Moradi v. Adelson*, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) ("Moreover, as the Moradi Plaintiffs were the first to file suit, it would be appropriate to assign [their attorneys] as lead counsel."); *Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) (noting that courts will consider which action was filed first for lead counsel purposes where "there is a need for an objective tie-breaker").

17

Proposed Interim Co-Lead Class respectfully submits that this Court should follow the majority of courts across the country to address this issue and reach a similar result.

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court consolidate the Related Actions and appoint Mason Barney and Kevin Laukaitis as Interim Co-lead Counsel.

DATED: July 14, 2023                 Respectfully submitted,


/s/ Mason A. Barney
Mason A Barney
Tyler J. Bean (*pro hac vice* forthcoming)
**SIRI & GLIMSTAD LLP**
745 Fifth Ave., Suite 500
New York, NY 10151
Phone: (212) 532-1091
mbarney@sirillp.com
tbean@sirillp.com


/s/ Kevin Laukaitis
Kevin Laukaitis
**Laukaitis Law LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

*Attorneys for Plaintiffs & Putative Class Members*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 14, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


*/s/ Mason A. Barney*
Mason A. Barney